**CORNING GLASS WORKS, Plaintiff,**

v.

**The FEDERAL GLASS COMPANY, Defendant.**

**Civ. A. No. 2763.**

United States District Court
S. D. Ohio, E. D.

Nov. 2, 1955.

Fulton B. Flick, Brown, Critchlow, Flick & Peckham, Pittsburgh, Pa., for plaintiff.

John J. Mahoney, Corbett, Mahoney & Miller, Columbus, Ohio, for defendant.

DRUFFEL, District Judge.

### Findings of Fact

1. This is a patent suit filed by the plaintiff, Corning Glass Works, Corning, New York, against The Federal Glass Company, Columbus, Ohio, for alleged infringement of Shaver & Martin Patent No. 2,177,336, dated October 24, 1939 on a Glass Vessel, hereinafter referred to as the "Shaver" patent, and H. R. Kiehl Patent No. 2,329,057, dated September 7, 1943 for Tempered Hollow Glass Article, hereinafter referred to as the "Kiehl" patent.

The defendant filed an answer on March 18, 1950, setting up the defenses of invalidity and noninfringement as to both patents. Defendant, at the same time, filed a counterclaim for declaratory judgment, asking the Court for a decree holding the patents in suit to be invalid, or if valid, that they are not infringed by defendant.

2. The plaintiff, Corning Glass Works, is a corporation organized and existing under the laws of the State of New York, and is the manufacturer of a wide variety of glasses and glass products. It was incorporated in the State of New York on December 24, 1936, as a consolidation of a New York company called Corning Glass Works and Macbeth-Evans Glass Company, a Pennsylvania corporation, and in the consolidation plaintiff took over the physical assets of the former companies.

3. Defendant, The Federal Glass Company, is a corporation organized and existing under the laws of the State of Ohio and is engaged in the manufacture and sale of glass articles, such as pressed tumblers, packers tumblers, pressed and blown tumblers, machine pressed dinnerware and kitchen ware, and decorated tumblers and jugs. Defendant has been engaged in this general type of glass manufacture for half a century and sells its ware throughout the United States, Canada, and foreign countries. Its manufacturing plant and its general offices are located at Columbus, Ohio.

4. This action arises under the patent laws of the United States and this Court has jurisdiction.

5. On October 24, 1939, U. S. Letters Patent No. 2,177,336 for a Glass Vessel was issued to plaintiff, Corning Glass Works, and since that time plaintiff has been, and now is, the sole and exclusive owner of said Letters Patent, together with the right to sue for and recover for infringement thereof in its own name.

6. On September 7, 1943, U. S. Letters Patent No. 2,329,057 for Tempered Hollow Glass Article was issued to plaintiff, Corning Glass Works, and since that time Plaintiff has been, and now is, the sole and exclusive owner of said Letters Patent, together with the right to sue for and recover for infringement thereof in its own name.

7. The claims in suit are product claims 1, 3, 5 and 7 of Patent No. 2,177,336; and product claims 1 to 8, inclusive, of Patent No. 2,329,057.

8. The patents in suit relate to glass tempering. The tempering of glass has been known in the prior art since 1874, and is accomplished by reheating the glass article after it has been formed to a temperature near the softening temperature of the glass, and then suddenly chilling the glass, either by means of quenching baths of oil, grease, wax, or resinous or bituminous substances, the boiling point of which is above the boiling point of water, or chilling by immersing the heated articles in baths of molten salts, molten metal, or molten alloy of metal, or by applying to highly heated glass any granular pulverulent or other finely divided substance in a cooled state which by contacting the glass absorbs a portion of the heat therefrom, or by heating a glass article almost to the softening point and then cooling it very rapidly in air or by jets of air to

temperatures below the strain point of glass.

This treatment, if properly controlled, had the effect of setting the glass article in a permanent condition of stress such that its surfaces are in compression, balanced by an inner portion which is in tension. Glass articles so treated are strengthened so that their ability to resist thermal and mechanical shock is greatly increased.

■ This process is variously referred to in the art as "thermally strengthening", "toughening", or "tempering", and is open to the public to the extent to which the process and production resulting from it are disclosed in expired patents and prior use articles. Defendant in the manufacture of its tumblers follows the prior art methods and products and therefore does not infringe the patents in suit.

9. In the manufacture of its tumblers it is not necessary for defendant to use any measurements to determine the stress values in its tumbler walls, since the prior art control of temper by polariscopic observation, rim impact and drop tests is all that is necessary for defendant to produce good commercial ware.

10. The evidence offered at the trial showed that optical measurements can only be converted to stresses by using a factor known as the stress optical constant. Plaintiff was unable to determine the stress optical constant in tempered glass and therefore failed to prove infringement by defendant.

11. Plaintiff's reports, Exhibits 17 and 18, were offered in evidence to prove infringement of defendant's product. These reports were in conflict with each other and contained errors which were admitted by plaintiff's witnesses. The reports failed to prove infringement of either patent in suit.

12. Shaver Patent No. 2,177,336 relates to Glass Vessels and, more particularly, to vessels employed for domestic purposes such as glass baking dishes. Glass baking dishes have been known and used for years. Defendant's products in suit are not baking dishes, but are tumblers made of high expansion glass.

13. Plaintiff failed to prove that defendant infringes the formula claims 1 and 3 of the Shaver patent. These formula claims have a lot of factors and terms employed in them, but plaintiff did not prove that they are contained in defendant's product.

14. Claims 1, 3, 5 and 7 of the Shaver patent are not infringed by defendant.

15. The claims 5 and 7 of the Shaver patent do not contain any minimum value but merely a maximum value of 2.6 kilograms per square millimeter.

16. The Shaver patent, while admitting it has long been known that the thermal endurance and the mechanical strength of glass could be increased by tempering (page 1, col. 1, lines 35–37), assumes that all prior art glass tempered ware was subject on breaking to being exploded into small fragments (Shaver patent, page 1, col. 1, lines 43–55; page 1, col. 2, lines 1–7), but prior art glassware makers knew the extent to which glass could be safely tempered before breaking.

17. In claims 5 and 7 of the Shaver patent we find a figure of 2.6 kilograms per square millimeter; however, plaintiff failed to prove that defendant's products had this value recited in said claims.

18. The Shaver patent admits that the tempering process is old, and that it has been used for years for the tempering of glass articles and specifically mentions automobile windshields, glass tumblers, and glass lenses (page 1, col. 1, lines 35–43).

19. Plaintiff was unable to prove that defendant's products had the values recited in claims 1, 3, 5 and 7 of the Shaver patent.

20. Claims 1, 2, 3, 4, 5, 6, 7 and 8 of the Kiehl patent are not infringed.

21. The Kiehl patent says (page 2, col. 2, lines 8–25) that the preferred way

to measure stress is to cut a longitudinal strip approximately 4 mm. wide from the tempered article extending through the stressed zone and into the adjacent annealed zone. This was proved to be impractical at the trial because when you cut the strip you release the strain. The strip would have a different stress value than the article it was cut from. If you could obtain a stress value from the cut sample, there is no way of knowing what the stress was in the uncut tumbler. The plaintiff was, therefore, unable to prove infringement of the Kiehl patent by defendant.

22. The alternative method described in the Kiehl patent, page 2, col. 2, lines 25–35, of measuring stress distribution in the wall of an article without removing a sample strip thereof by immersing the entire article in a liquid of the same index of refraction and observing the section in question tangentially, is ineffective to prove infringement because it sets up a method of measurement which makes it impossible to evaluate stresses at various points, or stress gradients.

23. The Kiehl patent in suit is for tempered tumblers, the top portion only being tempered, and the remainder of the tumbler being annealed. Plaintiff was unable to show infringement by defendant because to determine infringement you have to cut out a portion of the tumbler, and when you cut out a portion you release and readjust the stresses, making reliable measurement impossible.

24. That stresses referred to in the Kiehl specification and claims are actually released and greatly altered when a strip is cut from the tumbler wall, is recognized by glass experts, and photographs of such tumblers in which longitudinal strips have been cut show this release when observation of the cut is made by the polariscope (see photo C–2–1 in evidence).

25. In the manufacture of its tumblers, defendant uses the prior art methods of controlling stress so that the heat

stresses blend into the annealed portion gradually so that neither surface shows undesirable degrees of tension.

26. The Court finds that defendant has failed to sustain the burden of proof of invalidity.

27. On page 2, column 2, lines 69–76 of the Shaver patent and also again on page 3, column 1, lines 1–6, the patentees state that they desire to produce an article which, when it breaks, does not do so explosively. This nonexplosive breakage characteristic was old in the prior art (Morgan, R. p. 522; Stone R. p. 861; Verhandlungen, DX C–11, R. pp. 443–449; DX H–29, C.D. pp. 33–34). Glass manufacturers could control this as desired, to break in dicing, or nondicing fractures (Despret Patent No. 1,820,601, DX A–9, R. p. 345; Blau, R. pp. 650–654).

### Conclusions of Law

1. Claims 1, 3, 5 and 7 of Shaver & Martin Patent No. 2,177,336 are not infringed.

2. Claims 1 to 8, inclusive, of Kiehl Patent No. 2,329,057 are not infringed.

3. That judgment may be and hereby is entered for the defendant, dismissing the complaint.

4. That defendant recover its costs against plaintiff to be taxed.

5. Since the complaint has been dismissed, there is no necessity of considering validity, or for a finding or judgment on the counterclaim.

### Final Judgment

This cause came on to be heard and was tried in open Court on the evidence submitted by both of the parties hereto, and the Court having fully considered such evidence and the briefs of the parties, and upon consideration thereof, it is hereby

Ordered, Adjudged, and Decreed as follows:

1. That claims 1, 3, 5 and 7 of Shaver & Martin Patent No. 2,177,336 are not infringed.

2. That claims 1 to 8, inclusive, of Kiehl Patent No. 2,329,057 are not infringed.

3. That judgment may be and hereby is entered for the defendant, dismissing the complaint.

4. That defendant recover its costs against the plaintiff to be taxed.